UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  MORANDE ENTERPRISES, INC.,

        Debtor.
_____
INTERNAL REVENUE SERVICE,

        Appellant,

vs.                        Case No.    2:07-cv-498-FtM-29
                          Bankr. No.  9:05-bk-699-ALP

MORANDE ENTERPRISES, INC.,

        Appellee.
_____

**OPINION AND ORDER**

This matter comes before the Court on appeal of the Bankruptcy Court's Order on Reorganized Debtor's Motion to Subordinate Nonpecuniary Tax Penalty Claim of the Department of the Treasury-IRS as Set Forth in Claim No. 67 (Doc. #1-3).  Appellant filed a Brief (Doc. #10), appellee filed a responsive Brief (Doc. #18), and appellant filed a Reply Brief (Doc. #21).  For the reasons set forth below, the Court reverses the decision of the Bankruptcy Court.

**I.**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., 19 F.3d 1371, 1374 (11th Cir. 1994).  The legal conclusions of the bankruptcy court are reviewed *de novo*, In

re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993), while findings of fact are reviewed for clear error. FED. R. BANKR. P. 8013; In re Thomas, 883 F.2d 991, 994 (11th Cir. 1989), cert. denied, 497 U.S. 1007 (1990). After examination of the briefs and record, the Court finds that oral argument is not needed because the facts and legal arguments are adequately presented and the decisional process would not be significantly aided by oral argument.

**II.**

The underlying facts are undisputed. On January 13, 2005[1], the debtor Morande Enterprises, Inc. (debtor) filed a voluntary petition for Chapter 11 relief. At the time of filing, debtor owed the Internal Revenue Service (IRS) $208,326.40, consisting of $153,321.24 in taxes and interest, and $55,005.16 in penalties for unpaid FICA taxes in 2003 and 2004. The IRS filed a proof of claim for the following: Secured claims totaling $118,851.03 for debtor's FICA tax liabilities for taxable quarters ending June 30, 2003 through March 31, 2004; priority claims totaling $78,125.00 for FICA taxes and interest owed by the debtor for the last two quarters of 2004 and an estimated claim for 2005; and a general unsecured claim of $14,973.90 for penalties on the priority claims. (Doc. #11, pp. 2-3, 4.) Shortly thereafter the IRS amended its claim (Claim 67) by reducing its priority claims to $74,501.47. (Id. at p. 5.)

---

[1]As recognized by appellant, the pre-Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 Code was applied.

On April 10, 2006, debtor filed a Plan of Reorganization (Doc. #1-16); on May 27, 2006, the debtor filed a Plan of Reorganization (as supplemented) (Doc. #1-19); and on June 21, 2006, the debtor filed a First Amendment to Plan of Reorganization (as supplemented) (Doc. #2-15).  Each version of debtor's Plan provided for the *pro rata* treatment of all unsecured creditors (Class 3 Claims.)  Notice of the Plan was sent to all creditors, and all general unsecured creditors who submitted ballots voted to accept debtor's plan.

On July 14, 2006, the Bankruptcy Court entered an Order Confirming Debtor's Plan of Reorganization as Supplemented, Amended and Modified, Pursuant to 11 U.S.C. § 1129 (Doc. #2-17).  On December 6, 2006, the Bankruptcy Court entered an Order Approving First Modifications to Debtor's Confirmed Plan of Reorganization as Supplemented, Amended and Modified Pursuant to 11 U.S.C. § 1129 (Doc. #3-11).  The modifications did not affect the treatment of general unsecured creditors.  As relevant, the Bankruptcy Court's Order provided:

> The First Modified Plan satisfies Section 1129(a)(7) of the Bankruptcy Code in that with respect to each Impaired Class of Claim or Equity Interests, each Holder of a Claim or Equity Interest of such Class (i) has accepted the Plan or (ii) will receive or retain under the First Modified Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

(Doc. #3-11, p. 6, ¶ vii.)

On December 20, 2006, debtor filed a Corrected Objection to Claim No. 67 Filed By the Department of the Treasury - Internal Revenue Service (Doc. #3-13) stating that debtor had no property to serve as collateral and seeking to strike and disallow the secured portion of the claim, and instead treat that portion as unsecured. See also Response (Doc. #3-14). The IRS determined that debtor did lack sufficient property to secure the claims, and on June 5, 2007, filed a second amended proof of claim (Claim 67-2) which reclassified its secured FICA and interest claims as unsecured priority claims and reclassified the penalties on those claims as unsecured general claims. The Corrected Objection was sustained and Claim 67 was deemed amended and superseded by Claim 67-2, which was accepted by the Bankruptcy Court. (Doc. #4-2.)

On May 25, 2007, after the Bankruptcy Court's approval of the Plan, debtor filed a Motion to Subordinate Nonpecuniary Tax Penalty Claims (Doc. #3-15). See also Opposition (Doc. #3-17). On June 7, 2007, the Bankruptcy Court conducted a hearing on the Motion to Subordinate. (Doc. #4-8.)

On June 29, 2007, the Bankruptcy Court entered the Order on Reorganized Debtor's Motion to Subordinate Nonpecuniary Tax Penalty Claim of the Department of the Treasury-IRS as Set Forth in Claim No. 67 (Doc. #1-3) granting the debtor's motion to subordinate. The Bankruptcy Court noted that the debtor conceded that the equitable subordination provision, 11 U.S.C. § 510(c)(1), was not applicable because the government was not involved in any

inequitable conduct.  The Bankruptcy Court, however, seemed to accept debtor's argument that it could subordinate the tax penalty claim and could consider the equities of a particular situation by applying 11 U.S.C. § 726(a)(4) to a Chapter 11 case even though "technically" this section had no application to the Chapter 11 case.  The Bankruptcy Court relied on the reasoning and analysis of <u>United States v. Reorganized CF & I Fabricators of Utah, Inc.</u>, 518 U.S. 213 (1996) although recognizing that <u>CF&I Fabricators</u> concerned § 510(c).  The Bankruptcy Court found:

> Concerning the totality of the circumstances and equities of the case, this Court is satisfied that subordination would be proper based on the following.  First, this is a total liquidation Chapter 11 Case.  Second, the tax penalty claim is clearly a nonpecuniary claim.  Third, the IRS will receive full payment plus interest on the actual tax claims asserted in Claim No. 67.  Fourth, after the payment of administrative claims and priority claims, the monies available for distribution to general unsecured creditors will currently yield only a partial dividend. Therefore, based on the foregoing, it would be clearly inequitable and unfair for this dividend to be further diluted by having the reorganized Debtor pay the tax penalty claims to the detriment of all allowed claims of the general unsecured creditors.

(Doc. #1-3, p. 5.)  The effect of the Order was to subordinate the $55,005.16 non-priority tax penalty claim in favor of other unsecured creditors in the class.  The Notice of Appeal was filed from this June 29, 2007 Order.

**III.**

The IRS does not dispute that § 5.14 of the debtor's Chapter 11 supplemented Plan reserved debtor's right to seek modification of the plan to subordinate any claims to the extent permissible

under the Bankruptcy Code. (Doc. #21, p. 6.) It is also clear that the Bankruptcy Court has the general authority to modify a plan after confirmation. 11 U.S.C. § 1127(b). The IRS argues, however, that the Bankruptcy Court was without authority to subordinate the IRS tax penalty claim after the confirmation of the Plan under the circumstances of this case.

It is not clear from the Bankruptcy Court's Order whether it relied upon § 510(c) or simply the interplay of 11 U.S.C. § 1129(a)(7) and § 726(a)(4). The Bankruptcy Court stated: "Thus, considering the analysis applied in the case of In re CF&I, *supra*, this Court is satisfied with the reasoning of the court and, therefore, will apply the same approach in the above-captioned Chapter 11 case." (Doc. #1-3, p. 5.) CF&I Fabricators was decided on § 510(c) grounds. While the Bankruptcy Court had previously recognized that debtor was not relying upon § 510(c) in the absence of proof of three elements, including inequitable government conduct (Doc. #1-3, p. 2), its discussion of CF&I Fabricators included that the Supreme Court had left open the question of whether claimant misconduct was necessary to subordinate a nonpecuniary loss tax penalty claim (Doc. #1-3, p. 4). Therefore, it is useful to look to the parameters of § 510(c) as set forth by the Supreme Court.

A bankruptcy court has the authority to equitably subordinate bankruptcy claims in some circumstances. "Notwithstanding subsections (a) and (b) of this section, after notice and a

-6-

hearing, the court may -- (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; . . ." 11 U.S.C. § 510(c).  It is well-established in the Eleventh Circuit that to equitably subordinate claims under § 510(c), the proponent of the subordination must demonstrate three elements: "(1) that the claimant had engaged in inequitable conduct; (2) that the conduct has injured creditors or given unfair advantage to the claimant; and (3) that subordination of the claim in not inconsistent with the Bankruptcy Code."  In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990)(citing In re N&D Props., Inc., 799 F.2d 726, 731 (11th Cir. 1986)).  See also In re Lemco Gypsum, Inc., 911 F.2d 1553, 1556 (11th Cir. 1990). None of these cases, however, involved a nonpecuniary loss tax penalty.

In United States v. Noland, 517 U.S. 535 (1996), the Bankruptcy Court determined that an IRS noncompensatory tax penalty was an administrative expense normally entitled to a first priority in bankruptcy.  However, the Bankruptcy Court, relying upon § 510(c), equitably subordinated the tax penalty to the status of a general unsecured creditor after weighing the relative equities that seemed to flow from what it described as the Bankruptcy Code's preference for compensating actual loss claims.  Noland, 517 at 537.  The Sixth Circuit affirmed, finding that it was neither fair nor just to permit a tax penalty, which was not assessed because of

a pecuniary loss to the IRS, to enjoy an equal or higher priority with claims based on the extension of value to the debtor, even though unsecured.  Id. at 537-38.  The Supreme Court reversed.

The Supreme Court did not question the authority of the Bankruptcy Court to subordinate a tax penalty under some circumstances pursuant to § 510(c).  "Section 510(c) may of course be applied to subordinate a tax penalty, . . . Thus, principles of equitable subordination may allow a bankruptcy court to reorder a tax penalty in a given case. . . . The question is whether that leeway is broad enough to allow subordination at odds with the congressional ordering of priorities by category."  Id. at 540.  The Supreme Court concluded that § 510(c) was not broad enough, and that despite language in the lower court's opinion about balancing equities in individual cases, the decision had actually improperly subordinated tax penalty claims based on their very nature.  Id. at 541.  The Supreme Court held that since Congress had made the policy judgment that such a tax penalty should receive a priority as an administrative expense, the courts could not subordinate such claims categorically.  The Supreme Court held "that (in the absence of a need to reconcile conflicting congressional choices) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code."  Id. at 543.  Since Congress could have, but did not, provide a different priority for such tax penalties, "bankruptcy courts may not take it upon themselves to

make that categorical determination under the guise of equitable subordination." Id.

In CF&I Fabricators, the Supreme Court first determined that an exaction by the IRS under 26 U.S.C. § 4971(a) was a penalty (and not an excise tax) and therefore should be treated as an ordinary unsecured claim. The Supreme Court then determined that the Bankruptcy Court erroneously subordinated the penalty claim to those of all other general unsecured creditors pursuant to § 510(c), citing Noland. 518 U.S. at 228. The Supreme Court stated that "[t]he principle [of Noland] is simply that categorical reordering of priorities that takes place at the legislative level of consideration is beyond the scope of judicial authority to order equitable subordination under § 510(c)." CF&I Fabricators, 518 U.S. at 229.

Thus, while the Bankruptcy Court in the present case relied upon the "reasoning" and "analysis" of CF&I Fabricators, neither provides support for its decision. "The Supreme Court has already rejected the notion that a bankruptcy court can subordinate a tax penalty merely because the claim is a tax penalty." In re Odom Antennas, Inc., 340 F.3d 705, 709 (8th Cir. 2003)(citing Noland and CF&I Fabricators). The Court finds no basis to deviate from well established Eleventh Circuit law concerning the elements required for equitable subordination under § 510(c) merely because the claim involves a nonpecuniary tax penalty. If that is the import of the Bankruptcy Court's Order, it is reversed.

The parties interpret the Bankruptcy Court's Order as being based on the interplay of 11 U.S.C. § 1129(a)(7) and § 726(a)(4). While this seems the more likely basis for the decision, the Court finds that this interplay does not authorize the subordination in this case. Title 11 U.S.C. §1129(a) indicates the requirements a plan must satisfy before the plan can be confirmed by a bankruptcy court. Included is the requirement that with respect to each impaired class of claims each holder of a claim has accepted the plan <u>or</u> will receive an amount not less than if the debtor were liquidated under chapter 7. 11 U.S.C. § 1129(a)(7)(A)(i) and (ii). Here, each voting holder of an impaired claim approved the plan, and therefore resort to the latter requirement was not necessary. A confirmation requirement that is unnecessary cannot later justify post-confirmation subordination. The approved and confirmed plan always provided for *pro rata* distribution to general unsecured creditors, including the IRS penalty claim. Additionally, the subordination in this case was, like in <u>Noland</u>, based on the very nature of the tax penalty claim despite efforts to articulate individualized reasons.[2] Such a categorical approach was improper.

The Court finds neither <u>Cassis Bistro, Inc.</u>, 188 B.R. 472 (Bankr. S.D. Fla. 1995) nor <u>In re Friedman's Inc.</u>, 356 B.R. 766 (Bankr. S.D. Ga. 2006) persuasive. Both dealt with § 510(c), and

---

[2]These individualized reasons were the same given in <u>Cassis Bistro, Inc.</u>, 188 B.R. 472 (Bankr. S.D. Fla. 1995), although that case was construing § 510(c).

their statements regarding the interplay of § 1129(a)(7) and § 726(a)(4) were *dicta*.  Indeed, no case cited by Appellant or the Bankruptcy Court has *held* that subordination is appropriate post-confirmation in circumstances such as in this case.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  The Bankruptcy Court's Order on Reorganized Debtor's Motion to Subordinate Nonpecuniary Tax Penalty Claim of the Department of the Treasury-IRS as Set Forth in Claim No. 67 (Doc. #1-3) is **REVERSED** and the Order is **VACATED.**

2.  The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of September, 2008.

                                                                  _____
                                                                  JOHN E. STEELE
                                                                  United States District Judge

Copies:
Hon. Alexander L. Paskay
Counsel of record